**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RAYTHEON ENGINEERS &
CONSTRUCTORS, INC. etc.,
et al.,

        Petitioners,

vs.                                    Case No. 3:05-cv-474-J-32MMH

JAMES T. SULLIVAN

        Respondent.

_____

**<u>ORDER</u>**

This case is again before the Court, this time on petitioners' Petition for Review (Doc. 1) seeking judicial review of a final decision of the Department of Labor's Benefit Review Board ("Board") (Doc. 2, Ex. A)(hereinafter "03/30/05 Board Order") which upheld an Administrative Law Judge's ("ALJ") award of workers' compensation disability benefits to respondent James T. Sullivan ("Sullivan"), claimant below, premised on a finding of permanent partial disability. The petitioners are Sullivan's former employer, Raytheon Engineers & Constructors, Inc., nka Washington Group International, Inc., and insurance carrier Liberty Mutual Insurance Co. (referred to here collectively as "Raytheon"). This case arises out of a back injury sustained by Sullivan when he was employed as a hazardous waste coordinator on the tiny and

remote island Johnston Atoll, located in the Pacific Ocean approximately 800 miles southwest of Hawaii. The facility is a plant where weapons no longer needed by the United States military are decommissioned. Because Sullivan's employer Raytheon was a private contractor doing work on a United States military facility, this matter is governed by the Defense Base Act, 42 U.S.C. § 1651 et seq. ("DBA"), enacted by Congress to extend the workers' compensation coverage of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. ("LHWCA") to employees working on military bases outside of the continental United States. 42 U.S.C. § 1651(a); see ITT Base Services v. Hickson, 155 F.3d 1272, 1274 (11th Cir. 1998).[1] Raytheon's petition seeking reversal of the Board's decision is before the Court pursuant to 33 U.S.C. § 921 and 42 U.S.C. § 1653(b). Both parties filed memoranda (Docs. 2, 15), and the administrative record was filed by the clerk of the United States Department of Labor Benefits Review Board. (Doc. 19.)

---

[1] Jurisdiction in this Court is pursuant to the DBA, which provides for judicial review of determinations by the Board by the district court in the judicial district where the compensation order is involved, or nearest to the base where the injury occurred. 42 U.S.C. § 1653(b); see ITT Base Services v. Hickson, 155 F.3d 1272, 1274-75 (11th Cir. 1998).

**I.      Standard**

Under the statutory provisions of the DBA and LHWCA,[2] when liability for workers' compensation is controverted, the claim goes to an ALJ, who makes findings of fact and determines the validity of the claim. See 33 U.S.C. § 919. An aggrieved party may appeal the ALJ's decision to the Board.  33 U.S.C. § 921.  The Board does not make independent findings of fact and its review is limited. "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3).  See also Presley v. Tinsley Maintenance Service, 529 F.2d 433, 436 (5th Cir. 1976)(citations omitted)[3].

This Court then reviews decisions of the Board for errors of law and adherence to the substantial evidence standard that governs the Board's review of the ALJ's factual determinations. Bianco v. Georgia Pacific Corp., 304 F.3d 1053, 1056 (11th Cir. 2002)(citation omitted).  "On review, this Court is limited to considering errors of law as well as to making certain that the Board adhered to its statutory standard of review of factual determinations, which is whether the findings of fact are supported

---

[2]     The DBA incorporates the provisions of the LHWCA but provides that when a provision of the DBA modifies that of the LHWCA, the DBA controls. See 42 U.S.C. § 1651(a); ITT Base Services, 155 F.3d at 1274.

[3]     In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

by substantial evidence and consistent with the law." Roger's Terminal and Shipping Corp. v. Dir., Office of Worker's Comp. Programs, 784 F.2d 687, 690 (5th Cir. 1986). See also Universal Maritime Service v. Dir., OWCP, 137 Fed. Appx. 210, 212 (11th Cir. 2005); Bianco, 304 F.3d at 1056; Fulks v. Avondale Shipyards, Inc., 637 F.2d 1008, 1011 (5th Cir. 1981).

## II. Background

### A. Facts

Sullivan was a hazardous waste coordinator for Raytheon on Johnston Atoll.[4] As a hazardous waste coordinator, Sullivan was responsible for moving all processed, nonprocessed, hazardous and non-hazardous wastes, as well as scrap metal, including bombs, artillery, and mortar shells. (Tr. 26.)[5] He worked as part of a three-man team, with a supervisor and a fellow coordinator. The team members each worked an eight week rotation followed by two weeks off-island, so that two persons

---

[4] Unless otherwise noted, the following facts are taken from the April 23, 2004 Decision and Order on Remand by The Honorable Clement J. Kennington, Administrative Law Judge. (Doc. 19, Part 1 of 2, 04/23/04 ALJ Decision and Order on Remand (hereinafter "04/23/04 ALJ")), or this Court's previous Order entered in the case Raytheon Engineers & Constructors, Inc., et al v. Sullivan, No. 3:02-cv-597 (M.D. Fla. May 22, 2003) (Doc. 19, Part 1 of 2 (hereinafter "05/22/03 Court Order")).

[5] The "Case Record" was filed in this case by the Clerk of the Board with the United States Department of Labor Benefits Review Board. (Doc. 19, parts 1 and 2). "Tr." cites are to the transcript of the September 21, 2000 hearing before the Honorable Robert J. Lesnick, Administrative Law Judge. The transcript is contained within the Case Record. (Doc. 19, Part 2 of 2).

would always be present to move the materials.  (Tr. 26-27, 32, 110.)  The physical aspects of the job included shuffling and positioning heavy drums, which could weigh from 100 to 700 pounds.  (Tr. 30, 97.)

Because of the remote location of Johnston Atoll, Raytheon provided employees with substantial wage benefits and incentives to work at the island facility.[6]

Sullivan's back pain developed gradually through 1995.  (Tr. 36, 93.)[7]  He left the island in December, 1995, initially to receive medical attention for an unrelated leg injury.  (Tr. 39, 79-80, 82.)  While off the island, Sullivan saw a physician for his ongoing back problems.  (Tr. 39.)  After conducting an MRI scan, that physician, Dr. Dr. E. Carter Morris ("Dr. Morris"),  reported that Sullivan suffered from degenerative

---

[6]  Though the ALJ did not make any specific findings about the significant wage differential on Johnston Atoll, it was developed in the record.  (See Doc. 19, Part 1 of 2, 05/22/03 Court Order at 4 n.5.)  Sullivan worked on the island for eight weeks, a minimum of 60 hours a week, and then he was off the island for two weeks.  (Tr. 32.)  When Sullivan was on the island, his base pay was "plussed up by 20 percent."  (Tr. 31, 147.)  Sullivan was paid time and a half for hours worked on the island over 40 hours a week. (Tr. 149.)  He also received a 30 percent "completion bonus" at the end of his first 50 week contract, and thereafter after each 25 week contract.  (Tr. 31, 67, 147.)  The parties stipulated that Sullivan's average weekly wage while working for Raytheon was $1,984.06 (Tr. 9), which amounts to a salary of approximately $103,000 a year for a 52-week year as a hazardous waste coordinator, more than he could earn in the same position on the mainland.  (Tr. 149.)  See Kalama Services, Inc. v. Dir., Office of Workers' Comp. Programs, 354 F.3d 1085, 1094 (9th Cir. 2003), cert. denied, 125 S.Ct. 36 (2004)(employees working under Defense Base Act contracts on Johnston Atoll ordinarily earn significantly higher wages than they would in non-DBA projects elsewhere).

[7]  The parties stipulated that Sullivan sustained a compensable accident to his lower back while in the employ of Raytheon.  (Tr. 9; Doc. 2 at 2.)

disc disease at L4-5 and L5-S1 with bulging discs at both levels.  (Tr. 39 and Ex. R-7 at 95.)  Dr. Morris put Sullivan on restricted duty, with no lifting.  (Tr. 39.)   Sullivan remained off of the island a total of seven weeks, and in January, 1996, he failed to pass a physical examination required to return to the island.  (Tr. 46.)  He eventually returned to the island in February, 1996, with physical restrictions of not operating a forklift and not lifting more than 50 pounds.  (Tr. 48 and Ex. C-12.)  Sullivan testified that he could not lift, turn, bend over, stand for long periods of time or climb stairs because of his back, which prevented him from riding forklifts, lifting, opening sea containers, moving drums around, and climbing into sea containers.  (Tr. 83, 90.)  Sullivan testified that, despite his physical limitations, his job description was not modified and his job duties remained the same,  (Tr. 51-52); Sullivan's co-coordinator or his supervisor did the physical labor required of his job.  (Tr. 41.)

Sullivan's supervisor and suite mate, Howard Carmack ("Carmack"), testified that Sullivan would sometimes miss a day of work due to back pain, (Tr. 104), and that while Sullivan's general skills and abilities were more than adequate for the job as hazardous waste coordinator, his back injury affected his performance on occasion. (Tr. 109.)  Carmack said that though he was supervisor, he was required to perform the physical work of a hazardous waste coordinator when one of the coordinators was rotated off of the island.  (Tr. 101.)  In addition, he said that he would pitch in and help move the materials when Sullivan was unable to do the

6

physical work. (Tr. 110.) Carmack testified that a person who could not ride a fork lift or handle heavy barrels would not be able to do the job as hazardous waste coordinator. (Tr. 106.)

When Carmack left the island in May, 1996, (Tr. 104), Raytheon offered Sullivan the position of hazardous waste supervisor. (Tr. 88-89.) However, Sullivan gave notice of his resignation in May, 1996, effective in September 1996 when his contract expired (which would make him eligible to receive a 30 percent bonus at the end of his contract period). (Tr. 84-85.) Sullivan resigned from his position as hazardous waste coordinator "because of his perceived inability to perform his job and because it was 'time to go.'" (Doc. 2, Ex. A, 03/30/05 Board Order at 2; see alsoTr. 40, 51, 84-85.)

Raytheon's safety coordinator Charles Jones ("Jones") testified that he was in the process of evaluating Sullivan's physical condition in the spring of 1996 to determine the extent of Sullivan's physical limitations, and whether Sullivan was able to perform his job. (Tr. 144-45.) Jones testified that a final determination was not made because the issue became moot when Sullivan resigned. (Tr. 145.)

Sullivan left Johnston Atoll in September, 1996. He chose not to work for the next six months, and then took a part time and then a full time position as a school custodian in Alabama for one year. (Tr. 56, 58-59.) Eventually, in April 1999, Sullivan obtained a sedentary job as a plant control room operator in Alabama for

Westinghouse-Anniston, initially earning $15.45/hour, which increased to $20.40/hour by the 2000 administrative hearing. (Tr. 60-61, 63.)

In deposition, Dr. Perry Lawrence Savage ("Dr. Savage"), an orthopedic surgeon, testified he first saw Sullivan on July 30, 1997, and then again on January 26, 1998. (Doc. 19, Part 2 of 2, Ex. R-4 at 6, 14.) Dr. Savage testified that Sullivan's January 1996 MRI indicated he suffered degenerative disk changes, a small midline disk herniation, and a circumferential bulging disk. (Id. at 6, 8.) He reported there had been no significant changes in Sullivan's condition since 1996, (id. at 14), and that Sullivan should be restricted for an indefinite period to medium duty work, (id. at 15, 31), with no lifting over 40-50 pounds, bending, twisting or squatting. (Id. at 31-33, 37.) A second doctor, Zenko J. Hrynkiw ("Dr. Hrynkiw"), a neurosurgeon who treated Sullivan in the fall of 1999, also recommended that Sullivan's physical activities be restricted to a light-sedentary level because Sullivan's condition was made worse by mechanical activities of the spine. (Tr. 65-66; Doc. 19, Part 2 of 2, Ex. R-5 at 5, 11-12.)

### B.   **Procedural History**

On November 13, 1996, Sullivan filed a claim seeking permanent partial disability benefits for cumulative low back injury that manifested itself on November

12, 1995. (Doc. 19, Part 1 of 2, 05/22/03 Court Order at 5.)[8]  Following a hearing on September 21, 2000, the ALJ on March 21, 2001, issued a Decision and Order awarding Sullivan permanent partial disability benefits of $778.63 a week, beginning on January 26, 1998, the date of maximum medical improvement, and continuing until such time as Sullivan's condition ceases to be permanently and partially disabling. (Doc. 19, Part 1 of 2, ALJ Decision and Order - Awarding Benefits and Denying Section 8(f) Relief (hereinafter "03/21/01 ALJ") at 22.)[9]  Raytheon appealed to the Benefits Review Board contending, in part, that the ALJ erred as a matter of law because he did not consider the issue of suitable alternative employment.  On April 25, 2002, The Benefits Review Board, in its Decision and Order, concurred that the ALJ indeed erred by not considering the issue of suitable alternative employment, but, after reviewing the record, determined that ALJ's error was harmless.  The Board affirmed the ALJ's award of permanent partial disability benefits to Sullivan. (Doc. 19,

---

[8] Sullivan also sought benefits for unrelated venous insufficiency in the legs, but has since abandoned that claim.

[9] The ALJ awarded Sullivan $778.63 per week in permanent partial disability benefits, computed pursuant to 33 U.S.C. § 908(c)(21), based upon a wage of $20.40 per hour (his last known wage at his current job), or an average weekly wage of $816.00, and a loss of wage earning capacity of $1,168.06 a week.  Pursuant to statute, Sullivan is then entitled to partial disability benefits equal to sixty-six and two-thirds of the loss of wage earning capacity, which is $778.63 a week.  The ALJ denied Raytheon's request for Section 8(f) relief to shift a portion of the liability to a special fund created under the Act.  33 U.S.C. § 908(f)(1).  (Doc. 19, Part 1 of 2, 03/21/01 ALJ at 22.)

Part 1 of 2, 04/25/02 Benefits Review Board Decision and Order (hereinafter "04/25/02 Board Order") at 3.) Raytheon appealed that decision to this Court.

This Court held that the Benefits Review Board erred as a matter of law in re-reviewing the record evidence to reach its conclusion that the ALJ's error was harmless. In reaching this conclusion, the Court observed:

> Because the ALJ erroneously deemed evidence of suitable alternative employment irrelevant, he did not make the required findings that claimant was unable to physically perform his usual work, his modified post-injury work with Raytheon or any supervisory job that Raytheon may have offered. The Board's decision to make these factual findings on its own was error. The Board's review is limited to whether substantial evidence supports the ALJ's factual findings; the Board may not find facts in the first instance.

Raytheon Engineers & Constructors, In., et al v. Sullivan, No. 3:02-cv-597 (M.D. Fla. May 22, 2003) (Doc. 19, Part 1 of 2, 05/22/03 Court Order at 7-8).[10] The Court set aside the final decision of the Benefits Review Board to the extent that it found harmless the ALJ's failure to address suitable alternative employment, and remanded the case to the Board for remand to the ALJ "to consider evidence of suitable alternative employment." (Doc. 19, Part 1 of 2, 05/22/03 Court Order at 11.) The Court directed that the ALJ could take any action necessary to resolve this claim, including affording the parties another hearing if appropriate. (Id.)

---

[10] The Court also affirmed the Board's determination that the ALJ's finding that Raytheon was not entitled to Section 8(f) Special Fund relief was supported by substantial evidence. (Doc. 19, Part 1 of 2, 05/22/03 Court Order at 10.)

On remand,[11] the parties submitted briefs to the ALJ, but the record reflects that the ALJ received no further evidence. (Doc. 19, Parts 1 and 2 of 2.) On April 23, 2004, the ALJ issued a Decision and Order, holding: 1) that Sullivan had established a *prima facie* case of total disability, based upon the evidence that Sullivan could not physically perform his usual job of hazardous waste coordinator on Johnston Atoll, (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 2-4); and 2) that Raytheon did not establish that suitable alternative employment was available, finding that Sullivan was unable to perform the duties of hazardous waste supervisor, the only other position available. (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 4-5.) Based upon his findings of fact and conclusions of law, the ALJ reaffirmed the award of $778.63 a week in permanent partial disability benefits to Sullivan, pursuant to 33 U.S.C. § 908(c)(21), starting from January 26, 1998 through the present and continuing, plus future reasonable medical care and treatment arising out his work-related injury. (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 6.)

The Benefits Review Board, on March 30, 2005, affirmed the ALJ's Decision and Order on Remand awarding partial disability benefits, (Doc. 2, Ex. A, 03/30/05 Board Order at 6), specifically holding that the ALJ's finding that Sullivan established a *prima facie* case of total disability as to his former job was rational and supported

---

[11] In accordance with the Court's Order, the Board on November 20, 2003, remanded the case to the ALJ to consider evidence of suitable alternative employment. (Doc. 19, Part 1 of 2.)

by substantial evidence, (Doc. 2, Ex. A, 03/30/05 Board Order at 4), as was the ALJ's determination that employer Raytheon did not establish the availability of suitable alternative employment. (Doc. 2, Ex. A, 03/30/05 Board Order at 5.)

Raytheon petitions this Court to review the Board's Decision and Order, contending that the Board, and the ALJ erred in finding that 1) Sullivan had established a *prima facie* case of total disability; 2) Sullivan is permanently and partially disabled, and 3) Sullivan's employment with Raytheon did not constitute suitable alternative employment. (Docs. 1, 3.)

## III.   Discussion

### A.   Total Disability[12]

Disability under the LHWCA is defined as "'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.'" New Orleans (Gulfwide) Stevedores and Employers Nat'l Ins. Co. v. Turner, 661 F.2d 1031, 1037 (5th Cir. Unit A 1981)(quoting 33 U.S.C. § 902(10)). The Act provides no standard to distinguish between "total permanent," "permanent partial," "temporary total," and "temporary partial" disability." New

---

[12]   Inasmuch as the ALJ in this case had never, before remand, determined whether Sullivan had established a *prima facie* case of total disability using the correct legal standard, see New Orleans (Gulfwide) Stevedores and Employers Nat'l Ins. Co. v. Turner, 661 F.2d 1031, 1038 (5th Cir. Unit A 1981), there is no law of the case, as Sullivan now suggests. (Doc. 15 at 15.)  Following remand, the ALJ, as affirmed by the Board, applied the correct burden-shifting analysis. (Doc. 19, Part 1 of 2, 04/23/04 ALJ Order 2-5.)

Orleans (Gulfwide) Stevedores, 661 F.2d at 1037.  "The degree of disability is determined not only on the basis of physical condition, but also on factors such as age, education, employment history, rehabilitative potential, and the availability of work that the claimant can do."  Id. at 1037-38.  "Total disability" may be economic as well as medical.  Id. at 1038.  "It is therefore possible under LHWCA for an individual to be totally disabled 'when physically capable of performing certain work but otherwise unable to secure that particular kind of work.'"  Id. (citation omitted).  To establish a *prima facie* case of "total disability," the claimant must show that he can no longer perform his former job because of a job-related injury.  New Orleans (Gulfwide) Stevedores, 661 F.2d at 1038.

The ALJ, as affirmed by the Board, determined that based upon the totality of the evidence, Sullivan established a *prima facie* case of total disability under the Act.  (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 4; Doc. 2 Ex. A, 03/30/05 Board Order at 4.)  The ALJ reviewed the physical requirements of the coordinator job, and Sullivan's work restrictions following the injury to his back which prevented him from performing significant aspects of the job.  (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 2-3; Doc. 2 Ex. A, 03/30/05 Board Order at 3-4.)  Indeed, Raytheon's safety coordinator testified he knew of Sullivan's physical limitations and was evaluating in the spring of 1996 whether Sullivan was capable of continuing in his current job.  (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 3.)  The ALJ cited medical testimony which confirmed Sullivan's

injury, his physical limitations, and the indefinite duration of these physical restrictions.  (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 3; Doc. 2 Ex. A, 03/30/05 Board Order at 4.)  Noting that  the employee "need not establish that he cannot return to *any* employment, only that he cannot return to his former employment," (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 2 (citing New Orleans (Gulfwide) Stevedores, 661 F.2d at 1038)), the ALJ determined that Sullivan was not capable of performing his former job as hazardous waste coordinator on Johnston Atoll, either in the spring of 1996, or in 1998 and 1999 when the doctors were evaluating him. (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 3.)

Raytheon argues that because Sullivan returned to his position as hazardous waste coordinator in February 1996, "was able to work and earn his regular pay," (Doc 2 at 6), and intended to work until September 1996, (Doc. 2 at 7), he cannot establish total disability because he cannot demonstrate economic loss.  (Doc. 2 at 7.)  But in so arguing, Raytheon ignores the substantial evidence upon which the ALJ relied which supported the conclusion that upon his return, Sullivan was unable to perform all of the physical functions of his job.[13]  Furthermore, Raytheon, through its

---

[13]  Raytheon's argument that Sullivan's physical restrictions were "self imposed," (Doc. 2 at 7-8), and that he testified "he was able to do the job," (Doc. 2 at 8), is contrary to the substantial evidence relied upon by the ALJ that Sullivan returned to the island in February 1996 with physical restrictions which impeded his ability to perform many of the functions of a hazardous waste coordinator, (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 2), and is contrary to Sullivan's uncontradicted testimony that he was unable to ride forklifts, lift, open

14

Case 3:05-cv-00474-TJC-MMH   Document 29   Filed 12/14/05   Page 15 of 20 PageID 121

safety manager, recognized that Sullivan was unable to perform all of the functions of the job, and by spring, 1996, was evaluating whether Sullivan was able to continue in that position. (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 3; Tr. 40, 129 131, 133, 144-45 and Ex C-13.) Recognizing that he could not perform the coordinator job, which had never been modified to accommodate his physical limitations, (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 2-3; Tr. 51-52), Sullivan resigned in May 1996, (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 3; Tr. 51-52, 83.) At that point, Raytheon's evaluation whether to accommodate Sullivan or move him to another job ceased and was never concluded. (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 3; Tr. 144-45.) From May through September 1996, when he left the island, Sullivan trained a replacement worker who, presumably, could and did perform the physical requirements of the job, logically meaning that Sullivan himself did not have to. (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 3; Tr. 51.)[14]

"Disability" under the LHWCA, (and the DBA) means incapacity because of injury to earn the wages which the employee was receiving at the time of his injury in the same or any other employment. New Orleans (Gulfwide) Stevedores, 661 F.2d

---

sea containers, crawl inside containers and check on drums, or bend over, all requirements of the job. (Tr. 39, 41, 50, 90.)

[14] Training a new employee to handle hazardous wastes on Johnston Atoll requires approximately six months. (Tr. 148.)

15

at 1037. Because the LHWCA is construed to favor the injured worker, the worker may establish a *prima facie* case of disability "by showing he cannot perform his former job" because of the job-related injury. Id. at 1038. The ALJ's determination that Sullivan met this burden of proof is supported by substantial evidence, and the Board's affirmance of this finding is correct. Sullivan's resignation from the job he was not able to perform does not increase Sullivan's burden of proof, or, as a matter of law, negate the fact that the substantial evidence establishes that Sullivan could not perform the duties of a hazardous waste coordinator, creating a *prima facie* case of total disability. See Omega Protein, Inc. v. Druilhet, 144 Fed. Appx. 428, 430-31 (5th Cir. 2005)(affirming disability benefits to worker who declined offer for unsuitable warehouse clerk job he was not physically capable of performing).

### B.   Suitable Alternative Employment

If a claimant sets forth a *prima facie* case of total and permanent disability, the burden shifts to the employer to "establish the availability of other jobs that the claimant could perform." New Orleans (Gulfwide) Stevedores, 661 F.2d at 1038. To satisfy its burden, an employer itself may make suitable alternative employment available to the injured employee, or alternatively, show that suitable alternative employment is available to the injured worker within the worker's capabilities in the relevant labor market. Pride Offshore, Inc. v. Billiot, No. 00-60051, 2000 WL 1835108, at *2  (5th Cir. 2000); Darby v. Ingalls Shipbuilding, Inc., 99 F.3d 685, 688

(5th Cir. 1996) ; Mijangos v. Avondale Shipyards, Inc., 948 F.2d 941, 944 (5th Cir. 1991). While the "employer is not required to offer the claimant a job or tell the claimant about employment opportunities to satisfy this burden," the employer must at minimum demonstrate that there were suitable jobs available during the time in which the claimant alleges total disability. Pride Offshore, Inc., 2000 WL 1835108, at * 2; P&M Crane Co. v. Hayes, 930 F.2d 424, 430 (5th Cir. 1991) (citing New Orleans (Gulfwide) Stevedores, 661 F.2d at 1043)).[15]

Raytheon presented no evidence of suitable alternative employment within a relevant community off of Johnston Atoll, (see Doc. 19, Part 1 of 2, 04/23/04 ALJ at 5), but rather opted to try to meet its burden by contending that Sullivan could have secured suitable alternative employment on Johnston Atoll. Raytheon argues that its safety manager's testimony that Raytheon was "more than willing to accommodate" Sullivan (Doc. 2 at 9) and "more than happy to continue to work with [Sullivan] and accommodate him" (Doc. 2 at 10) fulfills Raytheon's burden to demonstrate that it had

---

[15] If the employer fulfills its burden of demonstrating the availability of suitable alternative employment, then the claimant must establish "reasonable diligence in attempting to secure some type of alternative employment within the compass of employment opportunities shown by the employer to be reasonably attainable and available." New Orleans (Gulfwide) Stevedores, 661 F.2d at 1043. "The determination as to the willingness of an injured worker to seek out alternative employment, however, is not a factor to be considered until after the employer has satisfied its burden of proof that suitable alternative employment is available." P & M Crane Co. v. Hayes, 930 F.2d 424, 429 n. 8 (5th Cir. 1991).

made suitable alternative employment available to him.  (Doc. 2 at 10.)[16]

The ALJ determined that the only job made available by Raytheon to Sullivan, that of hazardous waste supervisor, was not suitable alternative employment because the supervisor position "had the same physical demands as [Sullivan's] former job as hazardous waste coordinator." (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 5   This finding, affirmed by the Board, (Doc. 2 Ex. A, 03/30/05 Board Order at 4),  is supported by substantial evidence.  (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 4-5; Tr. 27, 88-89, 92,101.)

Raytheon can point to no other evidence in the record that suitable alternative employment at Sullivan's former level of pay was available to Sullivan.  While an employer is not required to prove  "actual job offers," it must present "evidence of jobs that the claimant might be able to perform." New Orleans (Gulfwide) Stevedores, 661 F.2d at 1041. The ALJ found that the testimony of a company safety manager, with no hiring or firing authority, (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 5; Tr. 132, 142-43), that there is a control room operator position on the island similar to the job Sullivan is currently performing in Alabama, (Doc. 19, Part 1 of 2, 04/23/04 ALJ at 5; Tr. 136); that the company has retained employees with physical limitations in the past, (Tr.

---

[16]  In light of its affirmance of the Board's, and the ALJ's determination that Sullivan set forth a *prima facie* case of disability, the Court rejects out of hand Raytheon's first argument that the burden never shifted to it to prove the availability of suitable alternative employment. (Doc. 2 at 9.)

132); and that the company would have been willing to accommodate Sullivan, (Doc. 2 at 9, 10; Tr. 135), was insufficient to satisfy the employer's burden of establishing that suitable alternative employment existed and was available on Johnston Atoll in the spring of 1996 or any time thereafter.  (Doc. 2 Ex. A, 03/30/05 Board Order at 5.) And, on remand from this Court on this specific issue of suitable alternative employment, Raytheon chose not to proffer any additional evidence (other than the safety director's testimony) of suitable alternative employment.   The ALJ's determination that Raytheon did not establish the availability of suitable alternative employment, as affirmed by the Board, (Doc. 2, Ex. A, 03/30/05 Board Order at 5), is supported by substantial evidence.[17]

The Court finds that the ALJ's conclusions and decision, and the Board's affirmance thereof, are supported by substantial evidence and in accordance with law.[18]

---

[17] That Sullivan did eventually find suitable alternative employment, a sedentary control room job at a similar plant in Alabama at a significantly less salary than he earned on Johnston Atoll, forms the basis for the ALJ's determination that Sullivan's back condition is only partially disabling. See supra note 9.

[18] Additionally, inasmuch as the administrative record contains no evidence, either presented at the April 21, 2000 ALJ hearing, or subsequently, to contradict the medical testimony that Sullivan's back injury existed in 1996 and thereafter, and will continue to limit him physically for an indefinite period into the future, Raytheon fails to establish that the ALJ's determination of a permanent partial disability from January 26, 1998 forward is not supported by substantial evidence or is contrary to law. (Doc. 1 at 1; Doc. 3 at 1.)

**IV.     Conclusion**

For these reasons, and upon due consideration, it is hereby **ORDERED:**

1.      The Decision and Order of the United States Department of Labor Benefits Review Board, <u>Sullivan v. Raytheon Engineers and Constructors, Inc. et. al.</u>, BRB No. 04-0666 (BRB, Mar. 30, 2005) (Doc. 2, Ex. A) is hereby **AFFIRMED**.

2.      The Petition for Review, filed by Raytheon Engineers & Constructors, Inc., nka Washington Group International, Inc., and Liberty Mutual Insurance Company, is hereby **DENIED**.

3.      Respondent James T. Sullivan shall file with the Court any motion seeking attorneys' fees, if so entitled, no later than **January 20, 2006**.

4.      The Clerk of the Court is directed to withhold Judgment until the Court determines any remaining issues of fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of December, 2005.

_____
TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies:
Counsel of Record